451 A.2d 1012

**Deborah Ann ASTEMBORSKI, Appellee,**

**v.**

**Robert SUSMARSKI, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 23, 1982.

Decided Nov. 4, 1982.

Ronald J. Susmarski, Jay S. Nedell, Erie, for appellant.

Frank Scutella, Timothy J. Lucas, Asst. Dist. Attys., Michael J. Veshecco, Dist. Atty., Erie, for appellee.

Thomas S. Kubinski, Erie, for County of Erie.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from a decision of the Court of Common Pleas of the Sixth Judicial District which held unconstitutional a statute of limitations requiring that actions to

establish the paternity of a child born out of wedlock be commenced within six years of the birth of the child.[1] On September 9, 1980, Deborah Ann Astemborski, appellee, filed an application for support with the Commonwealth's Department of Public Welfare, and, in so doing, assigned to the Commonwealth all rights concerning support of her child. Accordingly, on December 30, 1980, she appeared at the intake office of the Erie County Domestic Relations Department and filled out a Complaint for Support which was dated and marked filed December 30, 1980. This complaint was taken to the Prothonotary in order to receive a civil number on January 29, 1981, fifteen days after the applicable six year statute of limitations had expired. The trial court held that the governing rule at the time required the complaint to be filed with the Prothonotary, not with the Domestic Relations Department. For this reason, the trial court concluded that the complaint was not timely filed, and the alleged father of appellee's child, appellant Robert Susmarski, moved for dismissal of the complaint. Dismissal was denied, however, as the court declared the statute of limitations invalid.

The primary issue[2] in the instant appeal is whether the six year statute of limitations violates equal protection guar-

---

**1.** The applicable statute of limitations, 42 Pa.C.S.A. § 6704(e), provides:

> (e) **Limitation of actions.**—All actions to establish the paternity of a child born out of wedlock brought under this section must be commenced within six years of the birth of the child, except where the reputed father shall have voluntarily contributed to the support of the child or shall have acknowledged in writing his paternity, in which case an action may be commenced at any time within two years of any such contribution or acknowledgement by the reputed father.

In the instant case, it is undisputed that the alleged father has not acknowledged paternity and has not contributed to support of the child; hence, the six year period of limitation applies.

**2.** Two other issues raised in the case are that the County of Erie is not a real party in interest and is without standing to prosecute the case, and that the lower court erred in permitting the intervention of Erie County as a party without the filing of appropriate pleadings. Because of our disposition of this case on the equal protection issue, we do not address the other issues raised by appellant.

antees of the Fourteenth Amendment to the United States Constitution and of Article I, § 26 of the Pennsylvania. Constitution. Since support for a child born in wedlock may be sought at any time during its minority, while support for a child born out of wedlock may, due to the statute of limitations on establishment of paternity, be sought during only the first six years of a child's life, a disparity of treatment is alleged to exist in violation of equal protection guarantees. Specifically, appellee contends that the statute imposes a burden with respect to illegitimate children that is not shared by legitimate children, and that this burden is not justified by the Commonwealth's interest in preventing the assertion of stale or fraudulent claims.

The issue raised by the instant case parallels that recently decided by the Supreme Court of the United States in *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982). In *Mills,* a Texas statute barring paternity suits brought on behalf of illegitimate children more than one year after their birth was held violative of equal protection. Justice Rehnquist, writing for the Court, thoroughly analyzed the considerations governing scrutiny, on equal protection grounds, of such statutes of limitation:

> Our decision in *Gomez* [*v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973)] held that "a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally." 409 U.S. at 538, 93 S.Ct. 872 [at 875] 35 L.Ed.2d 56. Specifically, we held that a State which grants an opportunity for legitimate children to obtain paternal support must also grant that opportunity to illegitimate children. If Gomez and the equal protection principles which underlie it are to have any meaning, it is clear that the *support opportunity provided by the State to illegitimate children must be more than illusory.* The period for asserting the right to support must be sufficiently long to permit those who normally have an interest in such children to bring an action on their behalf despite the difficult personal, family, and financial circumstances that

often surround the birth of a child outside of wedlock. It would hardly satisfy the demands of equal protection and the holding of Gomez to remove an "impenetrable barrier" to support, only to replace it with an opportunity so truncated that few could utilize it effectively.

The fact that [the State] must provide illegitimate children with a bona fide opportunity to obtain paternal support *does not mean, however, that it must adopt procedures for illegitimate children that are coterminous with those accorded legitimate children. Paternal support suits on behalf of illegitimate children contain an element that such suits for legitimate children do not contain: proof of paternity.* Such proof is often sketchy and strongly contested, frequently turning upon conflicting testimony from only two witnesses. Indeed, the problems of proving paternity have been recognized repeatedly by this Court . . .[3]

Therefore, in support suits by illegitimate children more than in support suits by legitimate children, the State has an interest in preventing the prosecution of stale or fraudulent claims, and *may impose greater restrictions on the former than it imposes on the latter.* Such restrictions will survive equal protection scrutiny to the extent they are substantially related to a legitimate state interest . . . . The State's interest in avoiding the litigation of stale or fraudulent claims *will justify those periods of limitation that are sufficiently long to present a real*

3. In *Mills,* 456 U.S. at 98–99, 102 S.Ct. at 1554, n. 4, 71 L.Ed.2d at 777, n. 4, the Court rejected an argument, also advanced in the instant case, that recent advances in blood and genetic testing have provided scientific means so highly probative in determining paternity that their existence negates the state interest in avoiding litigation of stale or fraudulent claims. While these tests may, to a high degree of probability, be predictors of paternity or of non-paternity, if test results do not exclude a certain male from the class of possible fathers, that male must rely on conventional forms of evidence as proof of non-paternity, viz. evidence of lack of access to the mother, as well as his own testimony and the testimony of others. With regard to these conventional forms of proof, the state has a clear interest in having claims litigated while evidence remains available and fresh.

*threat of loss or diminution of evidence, or an increased vulnerability to fraudulent claims.*

456 U.S. at 98–99, 102 S.Ct. at 1554, 71 L.Ed.2d at 776–777. (Emphasis added; footnote omitted, citations omitted).

■ Thus, to be sustained on equal protection grounds, a statute of limitations governing assertion of paternity claims must satisfy two related requirements. First, the period during which claims may be asserted "must be sufficiently long in duration to present a reasonable opportunity for those with an interest in such children to assert claims on their behalf." *Id.* at 99, 102 S.Ct. at 1555, 71 L.Ed.2d at 778. Second, the time limitation imposed "must be substantially related to the State's interest in avoiding the litigation of stale or fraudulent claims." *Id.* Examining this Commonwealth's six year statute of limitations in light of these requirements, we find no denial of equal protection.

■ Although the statute of limitations in question, as applied, results in there being greater impediments to the obtainment of support for an illegitimate child than for one born in wedlock, the support opportunity still accorded the former is not so truncated as to be, as termed by the Court in *Mills,* merely "illusory." Allowance of a six year period in which to institute a paternity claim does not so restrict support rights as to effectively extinguish them. Unlike *Mills,* wherein certain birth-related financial and emotional factors were cited as encumbering a mother's filing of a paternity suit within twelve months of her child's birth, the present case involves a period of limitation of such greater duration as to negate birth-related encumbrances. Furthermore, as pointed out by Justice Rehnquist in *Mills,* the existence of greater impediments to recovery of support for an illegitimate child than for a legitimate one is justified by the fact that the cases differ in one crucial respect: a suit on behalf of an illegitimate child contains the element of proof of paternity, while a suit on behalf of a legitimate child does not. While the passage of twelve months could not be regarded as appreciably increasing the likelihood of fraudulent claims, a lapse of more than six years may reasonably

be expected to coincide with prejudice to the defense through loss of evidence, the death or disappearance of witnesses, and the fading of memories. Hence, the Commonwealth's interest in elimination of stale or fraudulent claims is substantially served by the limitation imposed.[4]

It is true that the legislative scheme of this statute will preclude certain claims from being successfully asserted. In the case at bar, the mother, representing her child, could have initiated a support action at any time prior to December 30, 1980, when she assigned her support rights to the

**4.** Justice O'Connor, concurring in *Mills,* and joined by three of her colleagues and specially joined by Justice Powell, specified that by invalidating the one-year statute the Court did not intend to prejudge the constitutionality of longer periods of limitation. We regard this as meaning simply that the Court would consider each such statute on its merits in light of the standards of evaluation set forth in *Mills.* Accord *Pickett v. Brown,* 638 S.W.2d 369 (Tenn.1982) (upholding two year statute of limitations upon actions to establish paternity citing *Mills* ).

The concurring opinion found it significant that a paternity suit was "one of the few Texas causes of action not tolled during the minority of the plaintiff," and that, therefore, it was "fair to question whether the burden placed on illegitimates [was] designed to advance permissible state interests." 456 U.S. 102–03, 102 S.Ct. at 1556, 71 L.Ed.2d at 781. The concurring opinion also found it significant that the one-year period of limitation was not sufficiently long to permit either the child or the mother to assert a claim for child support where there had been a continuing relationship between the natural father and mother or child for an extended period beyond the child's birth. *Id.* 102 S.Ct. at 1556–57, 71 L.Ed.2d at 782.

Except in certain limited circumstances, Pennsylvania, unlike Texas, does not provide for the tolling of statutes of limitations during minority. See 42 Pa.C.S. Sec. 5533. Thus, in Pennsylvania, paternity actions are treated no differently from the vast majority of actions brought on behalf of a child.

Moreover, the statute at issue sets forth exceptions to the six-year period of limitation which are designed to deal with the situation where a child born out of wedlock has had a continuing relationship with the natural father during the first six years of the child's life but the father has abandoned the child at a later point in the child's minority. Under Section 6704(e), *supra* note 1, where the natural father has either voluntarily contributed to the support of the child or acknowledged in writing his paternity, "an action may be commenced at any time within two years of any such contribution or acknowledgement by the reputed father." Whereas the Texas one-year statute of limitations unreasonably hindered the opportunity to prove paternity and thus obtain child support, the Pennsylvania statute adequately affords a fair opportunity to do so.

Commonwealth. Because she neglected to do this, for whatever reason, her child is now prevented forever from asserting a successful claim for support against the alleged father, at least in the absence of any estoppel or statutory exceptions. We do not address the wisdom of the legislative scheme, but only its constitutionality. Since the statute is substantially related to a legitimate state interest, viz., the prevention of stale or fraudulent paternity claims, it is not constitutionally infirm under a Fourteenth Amendment challenge even though the statute may operate, as it has in this case, to deprive an illegitimate child of its right to make a claim for support beyond the six year limit.

Having determined that the court below erroneously held the statute of limitations barring appellee's claim for support to be unconstitutional, we reverse.

Order reversed.